# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT NASHVILLE

## STATE OF TENNESSEE v. THOMAS D. SMITH

**Direct Appeal from the Circuit Court for Robertson County**
**No. 97-0290     Robert W. Wedemeyer , Judge**

---

**01C01-9904-CC-00146**
**No. M1999-00018-CCA-R3-CD - Decided May 5, 2000**

---

The appellant, Thomas D. Smith, appeals his conviction by a jury in the Robertson County Circuit Court of possession of 0.5 grams or more of cocaine with intent to sell. The appellant was convicted on the same day of simple possession of marijuana. In accordance with Tenn. Code Ann. § 39-17-432 (1997), the "Drug-Free School Zone Act," and in accordance with the appellant's career offender status, the trial court imposed an effective sentence of sixty years incarceration in the Tennessee Department of Correction. The appellant now challenges the constitutionality of the Drug-Free School Zone Act. Following a review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JUDGE NORMA MCGEE OGLE delivered the opinion of the court, in which PRESIDING JUDGE GARY R. WADE and JUDGE JOHN H. PEAY joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Thomas D. Smith.

Paul G. Summers, Attorney General and Reporter, Marvin E. Clements, Jr., Assistant Attorney General, Dent Morriss, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

On February 10, 1997, at approximately 8:00 p.m., Sergeant Ricky Morris of the Springfield Police Department apprehended the appellant, Thomas D. Smith, in possession of approximately one point four (1.4) grams of crack cocaine and one point nine (1.9) grams of marijuana. The appellant confessed to the police that he intended to sell the crack cocaine in order to pay his electric bill. At the time of his encounter with the police, the appellant was seated in a car in the parking lot of a public housing project situated within one thousand (1,000) feet of a local elementary school.

On May 1, 1997, a Robertson County Grand Jury returned a three count indictment

against the appellant.  Count One charged the appellant with

> knowingly . . . possess[ing], with intent to sell, a controlled substance, to wit: over .5 grams of Cocaine, within 1,000 feet of the real property that comprises a public elementary school, as classified in Section 39-17-408 of the Tennessee Code Annotated, in violation of TCA 39-17-417 . . . .

Count Two charged the appellant, in the alternative, with possession of more than 0.5 grams of cocaine with intent to deliver and within one thousand (1,000) feet of a public elementary school. Count Three charged the appellant with simple possession of marijuana.  On September 19, 1997, the State also filed a "Notice of Intent to Seek Enhanced Punishment" pursuant to Tenn. Code Ann. § 39-17-432 (1997), the Drug-Free School Zone Act.

The appellant's case proceeded to trial on October 6, 1997.  At the conclusion of the trial, the jury found the appellant guilty of the offenses charged in Counts One and Three.  The trial court then conducted a sentencing hearing on October 31, 1997.  The trial court imposed a sentence of eleven months and twenty-nine days incarceration in the county jail for the class A misdemeanor offense of simple possession of marijuana.  Tenn. Code Ann. § 39-17-418 (a), (c) (1997); Tenn. Code Ann. § 40-35-111(e)(1) (1997).  As to the appellant's conviction of possession of 0.5 grams or more of cocaine with intent to sell, however, the Drug-Free School Zone Act enhanced the class B felony offense to a class A felony for purposes of sentencing.  Tenn. Code Ann. § 39-17-417(a)(4), (c)(1) (1996); Tenn. Code Ann. § 39-17-432(b).  Additionally, the Act required the appellant to serve the minimum sentence within his appropriate range prior to the operation of sentence reduction credits or eligibility for parole or early release due to overcrowding.  Tenn. Code Ann. § 39-17-432 (c) - (e).  The State established at the sentencing hearing that the appellant's criminal record included six class C felony, drug-related offenses, and one class B felony, drug-related offense.  Accordingly, the trial court sentenced the appellant as a career offender who had committed a class A felony, Tenn. Code Ann. § 40-35-108(c) (1997), Tenn. Code Ann. § 40-35-112(c) (1) (1997), imposing a concurrent, day-for-day term of sixty years incarceration in the Tennessee Department of Correction.

From his conviction and sentence of possession of 0.5 grams or more of cocaine with intent to sell, the appellant now brings this appeal challenging the constitutionality of the Drug-Free School Zone Act, both on its face and as applied to the facts of his case.[1]

---

[1] We note the absence from the record of any pre-trial motion to dismiss Count One and Count Two of the indictment on the basis that the Drug-Free School Zone Act is unconstitutional. Tenn. R. Crim. P. 12(b)(2).  According to the record, the appellant raised this issue for the first time at the hearing on the appellant's motion for new trial.  We have previously held that, under Tenn. R. Crim. P. 12(b)(2), "defenses and objections based on defects in the indictment," including challenges to the constitutionality of an underlying criminal statute, must be raised prior to trial in order to avoid waiver of the issue.  State v. Seagraves, 837 S.W.2d 615, 623 (Tenn. Crim. App. 1992).  However, we also note that the State did not raise the issue of waiver at the motion for new trial hearing and does not raise the issue of waiver on appeal.  Accordingly, we will address the merits of the appellant's claim.  State v. Goss, 995 S.W.2d 617, 628 (Tenn. Crim. App. 1998), perm.

## II. Analysis

**a.      The Drug-Free School Zone Act**

The Drug-Free School Zone Act provides:

(a)  It is the intent of this section to create Drug-Free School Zones for the purpose of providing all students in this state an environment in which they can learn without the distractions and dangers that are incident to the occurrence of drug activity in or around school facilities. The enhanced and mandatory minimum sentences required by this section for drug offenses occurring in a Drug-Free School Zone are necessary to serve as a deterrent to such unacceptable conduct.

(b)  A violation of § 39-17-417 . . . that occurs on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or private elementary school, middle school or secondary school shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation.

(c)  Notwithstanding any other provision of law or the sentence imposed by the  court to the contrary, a defendant sentenced for a violation of subsection (b) shall be required to serve at least the minimum sentence for such defendant's appropriate range of sentence.  Any sentence reduction credits such defendant may be eligible for or earn shall not operate to permit or allow the release of such defendant prior to the full service of such minimum sentence.

(d)   Notwithstanding the sentence imposed by the court, the provisions of title 40, chapter 35, part 5, relative to release eligibility status and parole, shall not apply to or authorize the release of a defendant sentenced for a violation of subsection (b) prior to service of the entire minimum sentence for such defendant's appropriate range of sentence.

(e)  Nothing in the provisions of title 41, chapter 1, part 5 shall give either the governor or the board of paroles the authority to release or cause the release of a defendant sentenced for a violation of subsection (b) prior to service of the entire minimum sentence for such defendant's appropriate range of sentence.

(f) Nothing in this section shall be construed as prohibiting the judge from sentencing a defendant who violated subsection (b) to any authorized term of incarceration in excess of the minimum sentence for the defendant's appropriate range of sentence.

(g)  The sentence of a defendant who, as the result of a singe act, violates both subsection (b) and § 39-17-417(k), may only be

_____

to appeal denied, (Tenn. 1999).

enhanced one (1) time under such sections for each such act. The state must elect under which section it intends to seek enhancement of such defendant's sentence and shall provide notice of such election pursuant to § 40-35-202.

Tenn. Code Ann. § 39-17-432.

**b.     Due Process**

The appellant argues that the Drug-Free School Zone Act violates principles of due process guaranteed by the Fourteenth Amendment to the United States Constitution and Article 1, Section 8 of the Tennessee Constitution, because the Act is overbroad, vague, and generally fails to provide fair notice to citizens of their potential criminal liability. While the specific contentions of the appellant in this regard are not entirely clear from his brief, he apparently predicates the above argument upon the following grounds:

(1) The appellant was not "fore-warned" concerning the Drug-Free School Zone Act and its impact upon drug offenses committed in the public housing project where he was arrested.

(2) A person of ordinary intelligence would face considerable difficulty in measuring a one thousand (1,000) foot radius around a school and, in this case, the State required maps and a city engineer to demarcate the school zone.

(3) The statute does not explicitly set forth the requisite mens rea and does not clearly and unambiguously apply in the appellant's case.

(4) The Drug-Free School Zone Act enhances penalties for violations of Tenn. Code Ann. § 39-17-417 which occur, as in the appellant's case, beyond regular school hours of operation.

Initially, we note that, although the appellant invokes the overbreadth doctrine on several occasions in his brief in connection with these alleged grounds for relief, he fails to state any constitutionally protected activity implicated by the Drug-Free School Zone Act. A statute is unconstitutionally overbroad when its language "literally encompasses constitutionally protected activity." State v. Forbes, 918 S.W.2d 431, 448 (Tenn. Crim. App. 1995); State v. Burkhart, No. 01C01-9804-CC-00174, 1999 WL 1096051, at *3 (Tenn. Crim. App. at Nashville, December 6, 1999). Moreover, "constitutionally protected activity" has frequently been defined as and limited to the exercise of First Amendment rights. Burkhart, No. 01C01-9804-CC-00174, 1999 WL 1096051, at *3. The drug-related activity proscribed by Tenn. Code Ann. § 39-17-417(a) and for which the Act enhances applicable criminal penalties does not enjoy First Amendment or other constitutional protection.

As noted above, the appellant additionally argues that he was not "fore-warned" concerning enhanced penalties for drug offenses committed in the public housing project where he was arrested. He notes that his case was the first prosecution in Springfield, Tennessee that involved

the Drug-Free School Zone Act[2] and further notes the lack of any evidence of signs posted inside the school zone concerning the Act. To the extent the appellant is simply complaining that he was not aware of the Drug-Free School Zone Act, his ignorance is alone no basis for declaring the statute unconstitutional. Due process requires the State to provide fair notice to its citizens of prohibited conduct and potential consequences flowing from such conduct. United States v. Batchelder, 442 U.S. 114, 123, 99 S.Ct. 2198, 2204 (1979); Rose v. Locke, 423 U.S. 48, 49, 96 S.Ct. 243, 244 (1975). However, one purpose of codification of criminal offenses (and their corresponding penalties) is precisely to provide such warning. State v. Boyd, 925 S.W.2d 237, 242 (Tenn. Crim. App. 1995). Moreover, this is not a case in which "a person, wholly passive and unaware of any wrongdoing, [has been] brought to the bar of justice for condemnation in a criminal case." Lambert v. California, 355 U.S. 225, 229, 78 S.Ct. 240, 243 (1957). See also United States v. Holland, 810 F.2d 1215, 1222-1223 (D.C. Cir. 1987). Thus, we will presume that the appellant knew the law. See State v. Hayes, 899 S.W.2d 175, 182 (Tenn. Crim. App. 1995)("even for due process notice purposes, . . . a person is bound by a criminal statute . . . [i]gnorance of the law 'is never admissible to excuse crime'").

That having been said, "[i]f people of common intelligence must necessarily guess at the meaning of a statute and differ as to its application, then the statute is unconstitutionally vague and invalid." Boyd, 925 S.W.2d at 243. See also Kolender v. Lawson, 461 U.S. 352, 357-358, 103 S.Ct. 1855, 1858 (1983); Colautti v. Franklin, 439 U.S. 379, 390, 99 S.Ct. 675, 683 (1979); Rose, 423 U.S. at 49-50, 96 S.Ct. at 244; Grayned v. City of Rockford, 408 U.S. 104, 108-109, 92 S.Ct. 2294, 2298 (1972); State v. Wilkins, 655 S.W.2d 914, 915 (Tenn. 1983); Forbes, 918 S.W.2d at 447-448; Burkhart, No. 01C01-9804-CC-00174, 1999 WL 1096051, at *3. The vagueness doctrine not only concerns the fair notice requirement of due process but also, more importantly, the requirement of minimal guidelines to direct law enforcement. Forbes, 918 S.W.2d at 448; Burkhart, No. 01C01-9804-CC-00174, 1999 WL 1096051, at *3. In Tennessee, the determination of whether a particular criminal statute is unconstitutionally vague entails both a general evaluation of the statute in question and an examination of its application to a particular defendant. Burkhart, No. 01C01-9804-CC-00174, 1999 WL 618861, at *11 (Tenn. Crim. App. at Nashville, August 11, 1999). In other words, "once the court has determined that the law is not vague in a general sense, it will not allow the defendant then to allege other factual situations beyond the defendant's own conduct in which the statute might be vague." Id. See also State v. Hodges, No. 01C01-9804-CR-00170, 1999 WL 618861, at *11 (Tenn. Crim. App. at Nashville, August 11, 1999), perm. to appeal denied, (Tenn. 2000)("absent vagueness as to all its applications, a defendant's challenge to a statute is limited to the defendant's own conduct").

The appellant complains that the Act does not provide fair notice to potential violators nor adequate guidance to law enforcement due to the difficulty a person of ordinary intelligence would face in measuring the requisite distance from a school's property. Again, he notes

_____

[2]We note that, contrary to the appellant's assertion, Sergeant Morris merely testified that the appellant's case was the first drug-free school zone case *in which he had participated* to proceed to trial.

that, in his case, the State needed maps and a city engineer to demarcate the drug-free school zone. In State v. Jenkins, No. 01C01-9811-CC-00467, 1999 WL 981235, at *3 (Tenn. Crim. App. at Nashville, October 28, 1999), this court recently rejected an argument that the Drug-Free School Zone Act is unconstitutionally vague "in a general sense," because "a person of reasonable intelligence could not determine how to measure the distance between the transaction locale and the school property . . . ." We concluded that the method of measurement was clearly and unambiguously set forth in the statute. Id. We did concede that, notwithstanding the statute's clear and unambiguous language, "a pedestrian would face some difficulty in measuring a location at least 1,001 feet from a school's property." Id. Significantly, however, for purposes of assessing the application of the Act in the appellant's case, we concluded that this difficulty does not constitute a due process violation. Id. Moreover, notwithstanding our concession in Jenkins, it does not appear that the appellant would have faced insurmountable difficulties in determining his distance from the nearby elementary school or that the police in this case encountered any difficulty whatsoever. In addition to the testimony of the city engineer, Sergeant Morris testified that he was himself able to determine that the appellant's offense had occurred inside a school zone:

> I got a little city map that has a little scale on it and eyeballed that the
> best that we could and measured it out and it looked like it was going
> to be well within a thousand feet.

In a closely related argument, the appellant also asserts that the Drug-Free School Zone Act is vague, because the Act does not explicitly set forth the requisite mens rea. In Jenkins, No. 01C01-9811-CC-00467, 1999 WL 981235, at **2-3, this court rejected a similar, albeit purely facial, challenge to the Drug-Free School Zone Act. However, while difficult to discern from his brief, the appellant appears to further assert that the Act is unconstitutionally vague as applied in his case, because the Act does not clearly and unambiguously apply to violations of Tenn. Code Ann. § 39-17-417 when a defendant is not, in fact, aware of his presence inside a school zone and does not intend to sell drugs inside a school zone.[3]

_____

[3]The appellant notes and the record reflects that he "was not shown to intend to sale/deliver in a school zone." Moreover, according to the record, the trial court conveyed to the jury that a defendant need not be aware of his presence in the school zone or intend to sell drugs inside a school zone in order to trigger an enhanced criminal penalty under the Drug-Free School Zone Act. Specifically, the trial court instructed the jury:

> For you to find the defendant guilty . . . , the state must have proven
> beyond a reasonable doubt the existence of the following essential
> elements:
>
> (1)     the defendant knowingly possessed Cocaine, a
>         Schedule II controlled substance;
>                         and
> (2)     the defendant intended to deliver or sell such
>         controlled substance;
>                         and
> (3)     that the possession occurred on the grounds or

-6-

In support of his vagueness argument, the appellant proffers the general proposition that

> "[t]he existence of a mens rea is the rule of, rather than the exception
> to, the principles of Anglo-American criminal jurisprudence." . . .
> [O]ffenses that require no mens rea generally are disfavored . . . and
> . . . some indication of [legislative] intent, express or implied, is
> required to dispense with mens rea as an element of a crime.

Staples v. United States, 511 U.S. 600, 605-606, 114 S.Ct. 1793, 1797 (1994)(citation omitted). This general proposition is embodied in our criminal code in Tenn. Code Ann. § 39-11-301 (1997). This statute provides in relevant part:

> (a)(1) A person commits an offense who acts intentionally,
> knowingly, recklessly or with criminal negligence, as the definition
> of the offense requires, with respect to each element of the offense.
> * * *
> (b) A culpable mental state is required within this title unless the
> definition of an offense plainly dispenses with a mental element.
> (c) If the definition of an offense within this title does not plainly
> dispense with a mental element, intent, knowledge or recklessness
> suffices to establish the culpable mental state.

Id. In short, the appellant appears to suggest that the operation of Tenn. Code Ann. § 39-11-301 upon the terms of the Drug-Free School Zone Act obscures the "fair import" of its terms. Burkhart, No. 01C01-9804-CC-00174, 1999 WL 1096051, at *5; Tenn. Code Ann. § 39-11-104 (1997).

This court in Jenkins, No. 01C01-9811-CC-00467, 1999 WL 981235, at **2-3, in addressing the defendant's claim that the Drug-Free School Zone Act "is unconstitutionally vague and violative of due process because it lacks an explicit mens rea requirement," acknowledged two potential interpretations of the Act. We observed that, *if* the legislature only intended the Act to enhance penalties for violations of the Drug Control Act, the Act is not subject to Tenn. Code Ann. § 39-11-301 and does not require a mens rea. Id. at *3. Cf. People v. Pacheco, 666 N.E.2d 370, 375-376 (Ill. App. Ct. 1996). Alternatively, we observed that, if the legislature intended the Act to create a separate offense, the Act *is* subject to Tenn. Code Ann. § 39-11-301 and requires, at a minimum, a mens rea of recklessness. Id. We opined that the Act survives constitutional scrutiny under either

---

facilities of any school or within one thousand (1,000)
feet of the real property that comprises a public or
private elementary school, middle school or secondary
school.

The appellant did not object to this instruction during his trial nor, apparently, does he object to the instruction on appeal apart from his contention that the Drug-Free School Zone Act is unconstitutionally vague.

interpretation.  Id.[4]  We did not, however, address whether the Act was clearly and unambiguously susceptible to one interpretation.  We now conclude that the legislature's intent to enact an "enhancement statute" is unmistakable both from the plain language of the Act and from the Act's legislative history.[5]

Notwithstanding references in the Act to "violations of subsection (b) [of the Act]," Tenn. Code Ann. § 39-17-432 does not itself criminalize manufacturing, delivering, selling, or possessing a controlled substance; it merely imposes a harsher penalty for violations of Tenn. Code Ann. § 39-17-417 occurring within a school zone.  Cf. State v. Silva-Baltazar, 886 P.2d 138, 142

---

[4]In other words, an interpretation of the Act that omits any mens rea requirement comports with principles of due process.  In this regard, we wish to emphasize that the Drug-Free School Zone Act does not raise the concerns addressed by the United States Supreme Court in Colautti, 439 U.S. at 395 n. 13, 99 S.Ct. at 685 n.13, and Liparota v. United States, 471 U.S. 419, 426, 105 S.Ct. 2084, 2088 (1985).  As suggested earlier, the Act does not punish "'without warning an offense of which the accused was unaware,'" Colautti, 439 U.S. at 395 n. 13, 99 S.Ct. at 685 n.13, or otherwise "criminalize a broad range of apparently innocent conduct," Liparota, 471 U.S. at 426, 105 S.Ct. at 2088.  Rather, the Act enhances the penalty for a violation of Tenn. Code Ann. § 39-17-417, which statute already contains a mens rea requirement: one must knowingly possess a controlled substance and intend to sell the substance.  Id. at (a)(4).

[5]In Jones v. United States, 526 U.S. 227, 243 n.6, 119 S.Ct. 1215, 1224 n.6 (1999), the United States Supreme Court noted that its prior cases suggest the following principle:

> [U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.

Consistent with this principle, we have previously indicated that the State must allege the defendant's presence in a school zone in the indictment or charging instrument, submit the factual issue to the jury, and prove the defendant's presence in the school zone beyond a reasonable doubt.  State v. Fields, No. 03C01-9805-CR-00178, 1999 WL 826021, at *3 (Tenn. Crim. App. at Knoxville, October 18, 1999), perm. to appeal granted, (Tenn. 2000).  We wish to emphasize, however, that the question of whether the defendant's presence in a school zone is a "sentencing factor" or "element" for purposes of determining "the procedures by which the facts that raise the possible penalty are to be found," Jones, 526 U.S. at 251 n.11, 119 S.Ct. at 1228 n.11, is *not* necessarily the same question as whether the Act is an "enhancement statute" or a "separate offense statute" for purposes of application of Tenn. Code Ann. § 39-11-301.  Cf., e.g., Pacheco, 666 N.E.2d at 187 (interpreting the application of a statute similar, although not identical, to Tenn. Code Ann. § 39-11-301 to the Illinois drug-free school zone act, the Illinois Appellate Court observed that its supreme court, "in putting . . . enhancing factors on the same level as those of the underlying offense as far as requiring proof of the elements at trial, . . . did not put those factors on the same level so as to require proof of a mental state").

(Wash. 1994). Indeed, the only way to punish an offender under the Drug-Free School Zone Act is to first determine his sentence under Tenn. Code Ann. § 39-17-417. Id. Moreover, both the caption of the Act and the policy statement set forth in subsection (a) of the Act reflect the purpose of the legislature, not to create a new offense, but rather to create drug-free school zones by enhancing penalties for violations of Tenn. Code Ann. § 39-17-417 occurring inside the zones. See Dorrier v. Dark, 537 S.W.2d 888, 892 (Tenn. 1976)(in determining legislative intent, we look to the entire statute, including the caption and policy statement which provide the purpose, objective, and spirit behind the legislation). The caption to Tenn. Code Ann. § 39-17-432 states, "Drug-Free School Zone - *Enhanced criminal penalties for violations within zone*." (Emphasis Added). The policy statement similarly expresses an intent to create drug-free school zones by imposing "enhanced and mandatory minimum sentences" for drug offenses occurring inside a school zone. Tenn. Code Ann. § 39-17-432(a).

The clarity in meaning required by due process may also be derived from legislative history. Hayes, 899 S.W.2d at 181; Wilkins, 655 S.W.2d at 914. Discussions by members of the General Assembly prior to the enactment of the Drug-Free School Zone Act confirm the legislature's intent to enhance the penalties for violations of Tenn. Code Ann. § 39-17-417 occurring inside a school zone rather than create a new offense. Representative Lois M. DeBerry, the sponsor of the bill in the House of Representatives explained to her colleagues that the bill

> would create a drug-free school zone to reduce the occurrence of illegal drug activity in and around school facilities in order to enhance the learning environment and it raises penalties one classification higher than is presently specified for drug-related offenses which . . . . occur[] within one thousand (1,000) feet of any school . . . .

Hearing on H.B. 298 Before the House Judiciary Committee, 99th General Assembly, 1st Reg. Sess. (Tenn. May 16, 1995). Senator Roscoe Dixon, the sponsor of the bill in the Senate, similarly explained to his colleagues that the bill would "enhance[] penalties . . . one classification higher than is presently specified for drug-related offenses when these offenses occur [in and around schools]." Hearing on S.B. 244 Before the Senate Judiciary Committee, 99th General Assembly, 1st Reg. Sess. (Tenn. April 11, 1995). He later noted that the bill would "enhance a judge's ability to give a higher level of punishment." Hearing on S.B. 244 Before the Senate Finance, Ways and Means Committee, 99th General Assembly, 1st Reg. Sess. (Tenn. May 23, 1995). Moreover, members of the Senate Judiciary Committee sought reassurance from the Sentencing Commission that the proposed bill would not conflict with or merely duplicate existing *sentencing* provisions, including sentencing enhancement factors set forth in Tenn. Code Ann. § 40-35-114. Hearing on S.B. 244 Before the Senate Judiciary Committee, 99th General Assembly, 1st Reg. Sess. (Tenn. May 16, 1995). Senator C. Coulter "Bud" Gilbert concluded that a principal difference between sentencing enhancement factors in Tenn. Code Ann. § 40-35-114 and the proposed bill was that the bill would not leave the enhancement of a sentence to the discretion of the trial court. Id

Additionally, during a discussion of the proposed bill at a meeting of the Senate Judiciary Committee, Senator Thelma Harper referred to school grounds as "sacred grounds." Hearing on S.B. 244 Before the Senate Judiciary Committee, 99th General Assembly, 1st Reg. Sess.

(Tenn. May 16, 1995). She asserted that the legislature should try to "purify school grounds." Id. Senator Dixon also observed that, by enacting the Drug-Free School Zone Act, the legislature was attempting to create "sanctuaries" for children from drug-related activity. Hearing on S.B. 244 Before the Senate Finance, Ways and Means Committee, 99th General Assembly, 1st Reg. Sess. (Tenn. May 23, 1995). We note that the consequence of interpreting the Act to be a separate offense statute, i.e., the application of Tenn. Code Ann. § 39-11-301 and the requirement of a mens rea, would contravene this design. Indeed, in interpreting the federal drug-free school zone statute, the United States Court of Appeals for the Second Circuit observed that "a requirement that the dealer know that a sale is geographically within the prohibited area would undercut [the] unambiguous legislative design [to create drug-free school zones]." United States v. Falu, 776 F.2d 46, 50 (2nd Cir. 1985). The United States Court of Appeals for the Third Circuit similarly noted that, regardless of a defendant's intent to distribute drugs within a school zone,

> the mere presence of substantial quantities of drugs increases the risk of gunfire and other violence. . . . In addition, a person possessing drugs may abandon them while fleeing from the police . . . . The drugs may also be lost or stolen near a school and may then find their way into students' hands.

United States v. Rodriguez, 961 F.2d 1089, 1094 (3d Cir. 1992). See also United States v. Wake, 948 F.2d 1422, 1430-1434 (5th Cir. 1991); United States v. Ortiz, 146 F.3d 25, 29 (1st Cir. 1998).

Finally, the appellant complains concerning the enhancement, under the Drug-Free School Zone Act, of penalties for violations of Tenn. Code Ann. § 39-17-417 which occur, as in his case, outside regular school hours. The appellant asserts that this result is likewise inconsistent with the stated purpose of the Act. It is not readily apparent from the appellant's brief whether his argument is based upon the vagueness doctrine or, more expansively, upon substantive due process. If he is arguing that he cannot determine from the language of the Act whether the Act is applicable to such violations occurring outside regular school hours, he is complaining of vagueness and we must disagree. The language of the Act unambiguously imposes enhanced criminal penalties for drug offenses occurring inside the school zone regardless of the timing of the drug offense.[6] Moreover, as to any substantive due process claim, we have previously noted, in the context of an equal protection challenge to the Act, the rational relationship between the scope of the Act and the legitimate interests of the State:

> [W]e disagree with the defendant's suggestion that the statute should

---

[6]During the course of the debate in the Tennessee General Assembly concerning the enactment of the Drug-Free School Zone Act, Senator Stephen Ira Cohen offered an amendment to the Act on two separate occasions. Discussion on S.B. 244 Before the Senate, 99th General Assembly, 1st Reg. Sess. (Tenn. May 25, 1995); Hearing on S.B. 244 Before the Senate Judiciary Committee, 99th General Assembly, 1st Reg. Sess. (Tenn. May 16, 1995). Senator Cohen's amendment would have largely limited application of the Act to violations of Tenn. Code Ann. § 39-17-417 occurring during regular school hours or while official school activities were being conducted on school grounds. Id. This amendment was rejected. See Hayes, 899 S.W.2d at 181; Wilkins, 655 S.W.2d at 914.

be, as a constitutional matter, enforced only when children are actually attending school during the regular school year. Children frequent school grounds outside the traditional classroom hours. Playgrounds and basketball courts provide year-round entertainment for children. School facilities host various after-school clubs and activities. Further, many schools conduct summer classes. Accordingly, the instruments and transactions and subsequent use, such as needles and other paraphernalia, likely to be left at the school grounds present hazards and distractions to students at all times. The General Assembly articulated its intent to prescribe harsher penalties for drug offenses in the vicinity of schools, deterring these 'distractions and dangers . . . incident to the occurrence of drug activity.'

Jenkins, No. 01C01-9811-CC-00467, 1999 WL 981235, at *4.[7] This issue is without merit.

**b.    Cruel and Unusual Punishment**

The appellant contends that the Drug Free School Zone Act violates constitutional proscriptions against cruel and unusual punishment contained in the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Tennessee Constitution. Once again, the precise contours of the appellant's argument are unclear from his brief. He does not appear to be challenging the constitutionality of the Act on its face, as he does not allege that the Act could not constitutionally be applied to offenses other than his own. Rather, he asserts that the sentence authorized by the Act, absent the operation of sentence reduction credits or eligibility for parole or early release due to overcrowding, is disproportionate to his offense.

"The protection against cruel and unusual punishments afforded by the Eighth

---

[7]Our supreme court has noted that, unless a statute implicates a fundamental right, it will comport with substantive due process under both the federal and state constitutions if it "bears 'a reasonable relation to a proper legislative purpose' and is 'neither arbitrary nor discriminatory.'" Riggs v. Burson, 941 S.W.2d 44, 51 (Tenn. 1997). Because there is no right to possess illegal drugs, the only fundamental right implicated by the Drug-Free School Zone Act is the appellant's fundamental right to liberty. However, the United States Supreme Court has observed:

Every person has a fundamental right to liberty in the sense that the government may not punish him unless and until it proves his guilt beyond a reasonable doubt at a criminal trial conducted in accordance with the relevant constitutional guarantees. . . . But a person who has been so convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual . . . and so long as the penalty is not based on an arbitrary distinction that would violate [due process] . . . . .

Chapman v. United States, 500 U.S. 453, 465, 111 S.Ct. 1919, 1927 (1991)(citations omitted).

-11-

Amendment [to the United States Constitution] has defied precise delineation." Joseph G. Cook, Constitutional Rights of the Accused § 26:1, at 26-5 (3d ed. 1996). In particular, the United States Supreme Court case of Harmelin v. Michegan, 501 U.S. 957, 111 S.Ct. 2680 (1991), reflects disagreement within the United States Supreme Court concerning the extent to which the Eighth Amendment guarantees "proportionality" in noncapital cases. See also State v. Harris, 844 S.W.2d 601, 602 (Tenn. 1992)(the precise contours of the federal proportionality guarantee are unclear). Nevertheless, in Harris, 844 S.W.2d at 602-603, our supreme court noted that Article I, Section 16 of the Tennessee Constitution is subject to a more expansive interpretation than the Eighth Amendment to the federal constitution and, accordingly, held that the Tennessee Constitution mandates a proportionality inquiry even in noncapital cases.

The court in Harris, 844 S.W.2d at 603, citing Justice Kennedy's concurring opinion in Harmelin, 501 U.S. at 997-1009, 111 S.Ct. at 2702-2709 (Kennedy, J., concurring in part and concurring in the judgment), adopted the following proportionality analysis:

> [T]he sentence is initially compared with the crime committed. Unless this threshold comparison leads to an inference of gross disproportionality, the inquiry ends - - the sentence is constitutional. In those rare cases where this inference does arise, the analysis proceeds by comparing (1) the sentences imposed on other criminals in the same jurisdiction, and (2) the sentences imposed for commission of the same crime in other jurisdictions.

The court emphasized that, "because reviewing courts should grant substantial deference to the broad authority legislatures possess in determining punishments for particular crimes, '[o]utside the context of capital punishment, *successful* challenges to the proportionality of particular sentences [will be] exceedingly rare.'" Harris, 844 S.W.2d at 602 (citations omitted)(emphasis in original).

Determining whether a penalty for a particular offense raises an inference of gross disproportionality entails a comparison between the gravity of the offense and the harshness of the penalty. Solem v. Helm, 463 U.S. 277, 290-291, 103 S.Ct. 3001, 3010 (1983). Factors relevant to the gravity of an offense include (1) the nature of the crime, including whether society views the crime as serious or relatively minor and whether the crime is violent or non-violent; (2) the circumstances of the crime, including the culpability of the offender, as reflected by his intent and motive, and the magnitude of the crime; and (3) the existence and nature of any prior felonies if used to enhance the defendant's penalty. Id. at 291-297, 3010-3013. See also Harmelin, 501 U.S. at 1002-1003, 111 S.Ct. at 2705-2706 (Kennedy, J., concurring in part and concurring in the judgment). Factors relevant to the harshness of a penalty include the type of penalty imposed and, if a term of imprisonment, the length of the term and the availability of parole or other forms of early release. Solem, 463 U.S. at 297, 103 S.Ct. at 3013. The mandatory nature of a penalty will not alone raise an inference of gross disproportionality or render the penalty unconstitutional. Harmelin, 501 U.S. at 994-995, 111 S.Ct. at 2701 ("[s]evere, mandatory penalties may be cruel, but they are not unusual in the constitutional sense, having been employed in various forms throughout our Nation's history").

Again, the jury in this case found the appellant guilty of possessing with intent to sell

1.4 grams of crack cocaine and further found that he committed this crime within a short distance of a local elementary school. As noted previously, the appellant claimed that he intended to use the proceeds to pay his electric bill. The Drug-Free School Zone Act authorized the imposition of terms of incarceration ranging from fifteen years, day-for-day, to sixty years, day-for-day, depending upon the appellant's criminal record and other factors set forth by the Criminal Sentencing Reform Act of 1989. Tenn. Code Ann. § 39-17-417(c)(1); Tenn. Code Ann. § 39-17-432(b) - (f); Tenn. Code Ann. § 40-35-111(b)(1); Tenn. Code Ann. § 40-35-112. Because the appellant was a career offender, he was subject to a mandatory, day-for-day term of sixty years incarceration. Tenn. Code Ann. § 40-35-108 (c); Tenn. Code Ann. § 40-35-112(c)(1); Tenn. Code Ann. § 39-17-432 (c) - (e).

The Drug-Free School Zone Act, generally speaking, addresses the appropriate terms of imprisonment for violators of the Tennessee Drug Control Act who engage in the manufacture of illegal narcotics or traffic in illegal narcotics in the vicinity of our schools. In Harmelin, Justice Kennedy observed:

> Possession, use, and distribution of illegal drugs represent 'one of the greatest problems affecting the health and welfare of our population.' . . . Quite apart from the pernicious effects on the individual who consumes the illegal drugs, such drugs relate to crime in at least three ways: (1) A drug user may commit crime because of drug-induced changes in physiological functions, cognitive ability, and mood; (2) A drug user may commit crime in order to obtain money to buy drugs; and (3) A violent crime may occur as part of the drug business or culture.

Harmelin, 501 U.S. at 1002, 111 S.Ct. at 2705-2706 (Kennedy, J., concurring in part and concurring in the judgment). Justice Kennedy therefore concluded that a sentence of life without possibility of parole for possession of more than six hundred and fifty (650) grams of cocaine, regardless of the criminal record of the defendant, did not give rise to an inference of gross disproportionality. Id. at 1005, 2707.

Although the Drug-Free School Zone Act imposes in this case a comparable sentence for possession, with intent to sell, of a far lesser quantity of drugs, the Act reflects the legislature's judgment that individuals deserve more severe punishment when they commit particular drug offenses near a school than when they commit the same offenses elsewhere. See United States v. McDonald, 991 F.2d 866, 869 (D.C. Cir. 1993)(interpreting the federal drug-free school zone statute). This judgment is grounded upon the legislators' intimate knowledge of local conditions and "the [resulting] desire to give students increased protection from the violence often accompanying serious drug offenses, and from the threat of having their lives corrupted through proximity to drug traffickers and their wares." Id. "It is well recognized that . . . [d]rugs are especially destructive of children and young people, tending to trap them at an early age in a life of antisocial behavior, poverty, despair and crime." Commonwealth v. Alvarez, 596 N.E.2d 325, 331 (Mass. 1992)(assessing the validity of the Massachusetts' drug-free school zone statute under the Massachusetts Constitution). In short, viewing both the nature and circumstances of the crime and notwithstanding the relatively small quantity of crack cocaine at issue in this case and the appellant's alleged motive for the offense, the appellant committed one of the more serious offenses in our

-13-

society.

Moreover, the severity of the appellant's punishment is the direct result not merely of an isolated instance of possession inside a school zone of nine or ten rocks of crack cocaine with intent to sell but of a pattern of drug dealing evidenced by his seven prior convictions of felony drug offenses and his consequent status as a career offender.[8] Indeed, the appellant does not dispute in his brief the State's interest "in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law." Rummel v. Estelle, 445 U.S. 263, 276, 100 S.Ct. 1133, 1140 (1980)(a life sentence imposed after a third non-violent felony conviction passed muster under the Eighth Amendment to the United States Constitution). See also State v. Hinsley, 627 S.W.2d 351, 355-356 (Tenn. 1982)(a statute providing a determinate sentence of not less than ten years nor more than life imprisonment in the penitentiary for a three time drug offender was not per se violative of the Eighth Amendment to the United States Constitution); State v. Pearson, 521 S.W.2d 225, 229 (Tennessee statute mandating a sentence of life imprisonment for three convictions of enumerated felonies violated neither the Eighth Amendment to the United States Constitution nor Article 1, Section 16 of the Tennessee Constitution); State v. Bright, No. 01C01-9807-CR-00291, 1999 WL 743604, at **9-10 (Tenn. Crim. App. at Nashville, September 24, 1999)(a career offender's sentence of thirty years incarceration for the class B felony offense of possession with intent to deliver over twenty-six grams of cocaine did not violate his right to be free of cruel and unusual punishment). In this context, we are unwilling to conclude that the appellant's sentence raises an inference of gross disproportionality even though the Act precludes sentence reduction credits, parole, or early release due to overcrowding. Solem, 463 U.S. at 299 n. 26, 103 S.Ct. at 3014 n. 26 ("[n]o one suggests that [a sentence of life without parole] may not be applied constitutionally to fourth-time heroin dealers or other violent criminals"). This issue is without merit.

### III. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court.

Judge Norma McGee Ogle

Presiding Judge Gary R. Wade

Judge, John H. Peay

---

[8]The appellant suggests in his brief that, absent his career offender status, imposition of the minimum, day-for-day sentence of fifteen years incarceration would have violated constitutional proscriptions against cruel and unusual punishment. We simply note that, in Jenkins, No. 01C01-9811-CC-00467, 1999 WL 981235, at *5, we rejected an identical claim in the context of a conviction of sale of 0.5 grams or more of cocaine.

-14-