IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 20, 2013

**STATE OF TENNESSEE v. TERRELL B. JOHNSON**

**Appeal from the Criminal Court for Knox County**
**No. 92341   Mary Beth Leibowitz, Judge**

———————————

**No.  E2012-02246-CCA-R3-CD - Filed February 11, 2014**

———————————

The Defendant, Terrell B. Johnson, was found guilty by a Knox County Criminal Court jury of selling one-half gram or more of cocaine in a drug-free zone, a Class B felony. *See* T.C.A. § 39-17-417, -432 (2010).  The Defendant was sentenced as a Range I, standard offender to eight years at 100% service.  *See id.* § 39-17-432 (2010) (enhanced penalties for offenses committed in drug-free zones).  On appeal, he contends that the trial court erred (1) by allowing evidence at the trial that was not included in the State's discovery package and (2) by limiting his closing argument.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which ALAN E. GLENN and ROGER A. PAGE, JJ., joined.

John M. Boucher, Jr., Knoxville, Tennessee, for the appellant, Terrell B. Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; and Randall E. Nichols, District Attorney General; and Jennifer H. Welch and Sean McDermott, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

At the trial, Knoxville Police Investigator Jeremy Maupin testified that the price in the Knox County area for one gram of cocaine was about $100.  He used confidential informant James Roberts during his investigation of the Defendant.  Mr. Roberts became a confidential informant for the Knoxville Police Department in January 2008, and the transaction at issue occurred on July 9, 2009.  Mr. Roberts was paid $100 for working with the police in this case.

Investigator Maupin contacted Mr. Roberts, who called the Defendant's cell phone. The conversation was recorded and played for the jury. In the call, Mr. Roberts told the Defendant, "I need you for a hundred." Investigator Maupin said that based on his training and experience, the phrase meant Mr. Roberts wanted $100 worth of crack cocaine from the Defendant. In the call, Mr. Roberts told the Defendant to meet him at Holston Shopping Center. The Defendant told Mr. Roberts that he would meet him at the shopping center in fifteen minutes. Before Mr. Roberts met the Defendant, Investigator Maupin searched Mr. Roberts, gave him $100, placed a recording device on him, and took him to the shopping center. Investigator Maupin and his team were positioned across the street to watch and record the transaction.

The video recording of the transaction was played for the jury. The recording showed Mr. Roberts pacing in front of the Dollar General store. A gold Buick with Tennessee license plate number 683RGR stopped in front of the store, and Mr. Roberts got into the car. The car circled the parking lot and parked. Mr. Roberts left the car a few minutes later, and the car drove away. Mr. Roberts returned to the place where the police left him.

Investigator Maupin testified that he previously spoke to the Defendant about the gold Buick. Although the Defendant told Investigator Maupin that the gold Buick belonged to him, the car was titled to Dorian Taylor. Investigator Maupin had only seen the Defendant drive the car.

The audio recording from the device placed on Mr. Roberts was played for the jury. In the recording, Mr. Roberts got into the Defendant's car, and they discussed unrelated personal matters. Mr. Roberts mentioned a container from which the Defendant retrieved the drugs, paid the Defendant, and left the Defendant's car. Investigator Maupin picked up Mr. Roberts and retrieved a "large, off-white rock" from him. The rock field tested positive for cocaine and weighed one gram at the police station. Mr. Roberts identified a photograph of the Defendant as the person inside the gold Buick and said the Defendant's nickname was "Jay."

Investigator Maupin learned that Kumba Care, a daycare facility, was located across the street from where the transaction occurred. He measured the distance between Kumba Care and the location of the transaction, which was 334'.

On cross-examination, Investigator Maupin testified that he could not see inside the Defendant's car when Mr. Roberts was inside the car. Mr. Roberts was not provided a photograph lineup to identify the Defendant after the transaction because Mr. Roberts knew the Defendant, where he lived, and his car. Mr. Roberts identified the Defendant from a single photograph. Mr. Roberts was addicted to crack cocaine and worked with the police

to "take drug dealers off the streets to help his addiction" and for financial reasons. Mr. Roberts had previous convictions for criminal impersonation and attempted forgery.

Investigator Maupin photocopied the money provided to Mr. Roberts for the transaction but did not recover it because the Defendant was permitted to leave. Mr. Roberts was paid after he returned with the rock-like substance. He said that Mr. Roberts would have been paid for his time regardless of whether it was a "successful buy" but that Mr. Roberts would have been paid less for an unsuccessful buy.

James "Jimbo" Roberts testified that he had been a twenty-year crack cocaine user and was a confidential informant for the Knoxville Police Department. He had known the Defendant about one year at the time of the transaction and had been around the Defendant hundreds of times. He was familiar with the Defendant's voice and the gold Buick.

On July 9, 2009, Mr. Roberts met Investigator Maupin to make a cocaine purchase. He called the Defendant's cell phone and said, "I need you for a hundred," and they decided to meet at Holston Shopping Center. Investigator Maupin drove him to the shopping center, and Mr. Roberts waited on the sidewalk for the Defendant. Investigator Maupin placed a recording device on Mr. Roberts and searched him for money and drugs. Mr. Roberts denied having physical contact with anyone between the search and his getting into the Defendant's car.

Mr. Roberts identified the video recording of him standing on the sidewalk waiting for the Defendant. The Defendant arrived, and Mr. Roberts got into the car. They "made the deal" inside the car, and Mr. Roberts got out of the car. The Defendant obtained the "dope" from the console and gave it to Mr. Roberts.

Mr. Roberts identified the audio recording previously identified by Investigator Maupin. Mr. Roberts paid the Defendant, and the Defendant gave him a "piece of crack cocaine." Mr. Roberts walked to the location where he had waited for the Defendant and stayed there until Investigator Maupin arrived. He was paid for his efforts, and the police took him home.

Mr. Roberts admitted being previously convicted of theft and three counts of criminal impersonation but denied lying about buying crack cocaine from the Defendant. He said he was told to have the Defendant meet him at the Holston Shopping Center. He denied being paid for his trial testimony.

Ansley Taylor, a program evaluator for childcare licensing for the State of Tennessee, testified that her office maintained records of the licensed daycare agencies in Knox County.

Her records showed that on July 9, 2009, Kumba Care daycare was registered across the street from Holston Shopping Center. Kumba Care had been licensed with the State since April 26, 2000.

Tennessee Bureau of Investigation (TBI) Special Agent Denise Morrissey, forensic drug identification expert, analyzed the substance recovered in this case. She concluded that the substance was cocaine-based and weighed 0.8 grams at the time of the analysis.

Certified copies of three traffic citations and a printout of a Knoxville City Court computer documentation screen were received as an exhibit. The first citation was issued on July 10, 2009, for violating the seatbelt law. The second citation was issued on July 20, 2009, for violating the child restraint law. The third citation was issued on July 14, 2009, for violating the windshield tint law. The first two citations were issued to the Defendant, who was driving a gold Buick Century with license plate number 683RGR. Although the third citation was also issued to the Defendant, who was driving a car with license plate number 683RGR, the car was a tan Buick Regal. The Knoxville City Court information printout page showed that the Defendant pleaded no contest to an illumination of the license plate violation and that the Defendant was driving a gold Buick Century with license plate number 683RGR.

Upon this evidence, the jury convicted the Defendant of selling more than one-half gram of cocaine within 1000' of a childcare agency and of delivering more than one-half gram of cocaine within 1000' of a childcare agency. The trial court merged the convictions and sentenced him as a Range I, standard offender to eight years' confinement at 100% service. This appeal followed.

As a preliminary matter, the State contends that the appeal should be dismissed because the Defendant failed to file a timely notice of appeal. The Defendant does not address the timeliness of the notice of appeal in his brief. Tennessee Rule of Appellate Procedure 4(a) requires that the notice of appeal be filed with the trial court clerk within thirty days of the entry of the judgment appealed. However, the notice of appeal "is not jurisdictional and the filing . . . may be waived in the interest of justice." T.R.A.P. 4(a). Trial court minutes in the record show that the motion for a new trial was heard and denied on April 16, 2012, and the transcript of the hearing reflects the same. The notice of appeal was filed on October 17, 2012, and states that a notice of appeal was filed on September 12, 2012, but "under an incorrect docket number" due to a clerical error. We conclude that the notice of appeal was untimely regardless of whether it was filed on September 12, 2012, or October 17, 2012. We note that counsel did not reply to the State's argument that the appeal should be dismissed and that this failure does not lend itself to our granting relief. However, in the interest of justice for the Defendant, we waive the timely filing of a notice of appeal.

# I

The Defendant contends that the trial court erred by allowing the State to introduce the traffic citations. He argues that the citations were not included in the State's discovery package and that the State did not provide notice of its intent to present the citations at the trial, depriving him of a fair trial. The State responds that the trial court properly admitted the evidence to establish identity. We conclude the Defendant is not entitled to relief.

Tennessee Criminal Procedure Rule 16 states, in relevant part, "Upon a defendant's request, the state shall furnish the defendant with a copy of the defendant's prior criminal record, if any, that is within the state's possession, custody, or control if the district attorney general knows - or through due diligence could know - that the record exists." Tenn. R. Crim. P. 16(a)(1)(E). Likewise, upon a defendant's request, the State is required to "permit the defendant to inspect and . . . photograph . . . documents . . . if the item is within the state's possession . . . and . . . the government intends to use the items in its case-in-chief[.]" *Id.* 16(a)(1)(F)(ii).

At a jury-out hearing during the trial, the State requested permission to present the traffic citations to show that the Defendant was driving the gold Buick near the time of the offense. The State wanted to show the Defendant's identity as the driver of the car because the Defendant's cross-examination of the State's witnesses made identity an issue. Counsel objected on the basis that the defense had only cross-examined the State's witnesses, which was not evidence. Counsel argued that admitting the citations in evidence raised due process and fair trial issues and that the evidence was inadmissible without written notice under evidence rule 404(b). The trial court permitted the citations for the limited purpose of establishing the Defendant's identity as the driver of the gold Buick around the time of the transaction.

Regarding the alleged discovery violation, the Defendant failed to object to the citations on this basis at the trial. *See* Tenn. R. Evid. 103(a)(1) (Regarding the admission of evidence, "a timely objection . . . stating the specific ground of objection if the specific ground was not apparent from the context" is required.). We conclude that the issue is waived for failure to object at the trial on the basis of a discovery violation. We note, though, that at the hearing on the motion for a new trial, the trial court found that the State included the traffic citations in the discovery package. We cannot conclude that the Defendant is entitled to relief.

The Defendant contends that the trial court erred by limiting his closing argument regarding the applicable mental state for the crimes with which he was charged. He argues that counsel should have been permitted to discuss the "knowing" element of the offense because the State was permitted to address the culpable mental state. The State responds that the trial court properly limited the Defendant's closing argument because he provided an incorrect statement of the law. We agree with the State.

Our supreme court has held that "'closing argument is a valuable privilege that should not be unduly restricted.'" *State v. Reid*, 164 S.W.3d 286, 320 (Tenn. 2005) (quoting *State v. Bane*, 57 S.W.3d 411, 425 (Tenn. 2001)); *see State v. Cauthern*, 967 S.W.2d 726, 737 (Tenn. 1998). A trial court, though, has considerable discretion in controlling arguments and will only be reversed upon a showing of abuse of discretion. *State v. Bush*, 942 S.W.2d 489, 516 (Tenn. 1997). "It is the province of the trial judge to state to the jury the law of the case, and it is not always advisable for counsel to do so in final argument because of the possibility of error[.]" *State v. Smith*, 626 S.W.2d 283, 285 (Tenn. Crim. App. 1981).

At the hearing on the Defendant's motion for a judgment of acquittal, the issue of the Defendant's mental state at the time of the offense was raised. The State argued, and the trial court agreed, that the State did not have to prove beyond a reasonable doubt that the Defendant knew the daycare facility was within 1000' of the location of the transaction. The State wanted to ensure that counsel was not permitted to argue such during his closing argument. The court concluded that the knowing mental state concerned the nature of the Defendant's conduct or that the circumstances existed, not whether he knew of the daycare's location.

During the State's closing argument, the prosecutor stated,

> We have to prove knowing. . . . Ladies and gentlemen, we would submit to you that this was a knowing act: receiving the phone call, making the deal, getting the crack, getting into the car, driving to the shopping center, getting Jimbo in the car, making the exchange, taking the money, giving the crack. That's -- you know that these actions are going to cause the result of this sale and delivery of the crack cocaine. So we believe that we have proven knowingly.

The Defendant did not object to the State's argument. Counsel stated during his closing argument, "Knowing, that's the circumstances surrounding everything. Each and every element: knowingly . . . going into a school zone to make a drug deal, knowing. Do you

know – do you have any evidence that Terrell Johnson knowingly did that in a school zone?" The State objected, and a bench conference was held out of the jury's hearing. The State argued that it was not the State's burden to prove the Defendant knew the transaction occurred in a drug-free zone. Counsel argued it was a matter for the jury to determine what the Defendant knew. The bench conference ended, and the trial court instructed the jury that although it would address the issue fully in the final jury charge, the statements and remarks made by counsel were not evidence and were not the court's instruction regarding the law. Counsel resumed his closing argument and told the jury that "[k]nowing is a factor. It's an element of these crimes. Knowing, knowingly. Read those again and again and again. You decide what knowingly means."

"It is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with the intent to manufacture, deliver or sell the controlled substance." T.C.A. § 39-17-417. Our Code states that drug transactions

> occur[ing] on the ground of facilities of any school within one thousand feet (1,000') of the real property that comprises a public or private elementary school, middle school, secondary school, preschool, child care agency, or public library, recreations center or park shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation.

*Id.* § 39-17-432 (2010). This court has stated that the Drug Free Zone Act "enhances the penalty for a violation of Tenn. Code Ann. § 39-17-417, which contains a *mens rea* requirement: one must knowingly possess a controlled substance and intend to sell the substance." *State v. Smith*, 48 S.W.3d 159, 167 n.4 (Tenn. Crim. App. 2000). This court concluded that the Act "does not itself criminalize manufacturing, delivering, selling, or possessing a controlled substance; it merely imposes harsher penalty for violations of Tenn. Code. Ann. § 39-17- 417 occurring within a school zone." *Id.* at 167-68. The policy underlying the Act was "not to create a new offense, but rather to create drug-free school zones by enhancing penalties for violations of Tenn. Code Ann. § 39-17-417 occurring inside the zones." *Id.* at 168 (citing *Dorrier v. Dark*, 537 S.W.2d 888, 892 (Tenn. 1976)); *see State v. Jenkins*, 15 S.W.3d 914, 917 (Tenn. Crim. App. 1999) (stating that if the legislature intended the Act to be an "enhancement statute," it does not require a *mens rea*).

The trial court did not abuse its discretion by limiting the Defendant's closing argument. Counsel erroneously stated that the State was required to prove beyond a reasonable doubt that the Defendant knew the transaction occurred in a prohibited zone. The State was only required to show that the Defendant knowingly sold and delivered cocaine and that the transaction occurred within the prohibited zone. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE