IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
August 19, 2015 Session

## STATE OF TENNESSEE v. JORDAN THOMAS PETERS

**Appeal from the Criminal Court for Sullivan County**
**No. S58069      Robert H. Montgomery, Jr., Judge**

_____

**No. E2014-02322-CCA-R3-CD – Filed November 5, 2015**

_____

CAMILLE R. MCMULLEN, J., concurring in result only.

Given the clear and apparently controlling case law concerning convictions enhanced pursuant to the Drug Free School Zone Act (the Act), I must reluctantly concur. However, I write separately to set forth my ever increasing concern regarding enhancement of convictions under the Act.[1]

A person convicted of a drug related offense that occurs "on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or private elementary school, middle school, secondary school, preschool, child care agency, or public library, recreational center or park shall be punished one (1) classification higher than is provided . . . for such violation." T.C.A. §§ 39-17-417, -432 (2010). Here, the Defendant was convicted of delivery of psilocin and delivery of psilocin within 1000' feet of an elementary school. Delivery of psilocin, a Schedule I controlled substance, is a Class B felony with a sentence range of eight to fifteen years. Delivery of psilocin within 1000' feet of an elementary school elevated the Defendant's potential punishment from a Class B felony to a Class A felony with a sentence range of fifteen to twenty-five years. Defendants sentenced under the Act to the minimum term in their sentencing range, as in this case, "will serve literally 100% of

_____

[1] The Sentencing Project has noted that drug-free zone laws, originating as far back as 1970, are among the most long-standing sentencing policies in America's war on drugs. The report evaluated the effectiveness of state laws over time and found widespread problems. Consequently, at least seven states, including Connecticut, Delaware, Indiana, Kentucky, Massachusetts, New Jersey, and South Carolina reformed their drug-free zone laws. Nicole D. Porter & Tyler Clemons, Drug-Free Zone Laws: An Overview of State Policies, The Sentencing Project (Dec. 2013), available at http://sentencingproject.org/ doc/publications/sen_Drug-FreeZoneLaws.pdf; see also Jordan T. Smith, Equal Protection Under the Law? Examining Tennessee's Drug Free School Zone Act (May 2012) (unpublished honors thesis project, University of Tennessee) (on file with the University of Tennessee), available at http://trace.tenne ssee.edu/utk_chanhonoproj/1537.

their sentences," without the benefit of parole or sentence reduction credits. See Davis v. State, 313 S.W.3d 751, 763 (Tenn. 2010); State v. Smith, 48 S.W.3d 159, 173 (Tenn. Crim. App. 2000) (holding that the Drug-Free School Zone Act necessarily "precludes sentence reduction credits, parole, or early release due to overcrowding"). Finally, while the Act was created by the legislature as a sentence enhancement, it is framed as a separate crime because the facts supporting the enhancement must be presented in the indictment and to the jury at trial to determine if the proof supports the enhancement beyond a reasonable doubt.

It is also important to point out that this court has repeatedly rejected the following challenges to the Act, see State v. Jenkins, 15 S.W.3d 914, 918 (Tenn. Crim. App. 1999) (holding the Act was not "unconstitutionally vague" and rejecting argument that the Act did not apply beyond regular school hours); Smith, 48 S.W.3d at 165, 171-73 (holding that the Act was not unconstitutionally vague and that sixty-year sentence was not cruel and unusual punishment); State v. Lockhart, No. M2013-01275-CCA-R3-CD, 2015 WL 5244672, at *42 (Tenn. Crim. App. Sept. 8, 2015) (rejecting argument that "simply traveling through a school zone is not enough to apply the provisions of the Act"); State v. Jordan Peters, No. E2012-02135-CCA-R3CD, 2014 WL 50795, at *8 (Tenn. Crim. App. Jan. 7, 2014); State v. James Alfred Reed, Jr., No. E2010-01138-CCA-R3-CD, 2011 WL 2766766, at *6 (Tenn. Crim. App. July 18, 2011) (rejecting argument that the Act did not apply when offense occurred at night and during the summer when school was not in session).

In this case, the Defendant was twenty years old at the time of the offense and had no previous criminal history. He received a mandatory minimum sentence of fifteen years to be served at 100%. This sentence was required under the Act because the Defendant sold a handful of psilocybin mushrooms[2] to his friend, a paid informant, at a gas station located within 1000' feet of an elementary school.[3] As I understand his

---

[2] Psilocybin is a naturally occurring psychedelic compound produced by more than 200 species of mushrooms, collectively known as psilocybin mushrooms. See Drug Enforcement Admin., U.S. Dep't of Justice, Drugs of Abuse: Hallucinogens 70 (2015 ed.), available at http://www.dea.gov/pr/multimedia-library/publications/drug_of_abuse.pdf; see also Psilocybin mushrooms, Wikipedia.com, https://en.wikipedia.org/wiki/Psilocybin (last visited Oct. 29, 2015). While the street prices fluctuate, psilocybin mushrooms generally cost $20 for 1/8 ounce and $100 and $200 for an ounce. See Psilocybin/Psilocyn, Ctr. for Substance Abuse Research, http://www.cesar.umd.edu/cesar/drugs/psilocybin.asp (last visited Oct. 30, 2015). In the first transaction, the Defendant sold a single-use amount of mushrooms to the informant in exchange for $40. The amount sold in the second transaction was the equivalent of two doses, one for the informant and one for her husband.

[3] The Defendant was indicted for the sale or delivery of psilocin, a class B felony (counts one and two) and the sale or delivery of psilocin within 1000 feet of a school zone (counts three and four). Counts one and three were dismissed. For counts two and four, he received concurrent terms of eight and fifteen years' incarceration respectively.

argument, the Defendant does not deny that he sold the mushrooms to his friend or that he did so on his own volition. Rather, he contends that he was lured to the **location** of the sale by the informant for purposes of triggering the increased penalties under the Act. Citing federal authority, but without much further elaboration, the Defendant invites this Court to adopt some form of sentencing entrapment or sentence manipulation:

> Drug-free school zones can be accomplished by sustained enforcement in and around schools and by heightened sentencing for sales that take place at schools as a matter of prosecutorial policy. However, enforcement operations that lure traffickers to make cocaine into "crack" to deliver into school zones to create longer sentencing have been properly characterized by judges as "sentencing entrapment" and "sentencing manipulation" and are unjust and dishonest. See United States v. Jones, 18 F.3d 1145, 1153 (4th Cir. 1994) ("[S]entencing manipulation [is] outrageous government conduct that offends due process."); United States v. Barth, 990 F.2d 422, 424 (8th Cir. 1993) ("[S]entencing entrapment [is] outrageous conduct which overcomes the will of an individual predisposed only to dealing in small quantities for the purpose of increasing the amount of drugs and the resulting sentencing of the entrapped defendant.").

Eric E. Sterling, The Sentencing Boomerang: Drug Prohibition Politics and Reform, 40 Vill. L. Rev. 383, 427 n.167 (1995).

The concept of "luring" as described in the above cases generally refers to the practice of law enforcement or their agent/informants increasing the amount of drugs to meet a certain sentencing threshold as well as establishing the location of the transaction in a drug free zone. The federal circuit courts vary in their definition of, and requirements for bringing successful claims of sentencing entrapment or manipulation. See Jessica A. Roth, The Anomaly of Entrapment, 91 Wash. U. L. Rev. 979, 1034 (2014); Eda Katherine Tinto, Undercover Policing, Overstated Culpability, 34 Cardozo L. Rev. 1401 (2013) (thoroughly discussing concepts, cases, and impact of sentencing entrapment and manipulation). Basically, if it was shown at sentencing that law enforcement engaged in "outrageous conduct," then the trial judge had the authority to reduce the sentence. Unlike its federal counterpart, however, a trial court imposing sentence under the Act has no discretion to reduce the sentence below the mandatory minimum. The states that have adopted some form of sentencing entrapment have incorporated it into their drug free zone laws as an affirmative defense. See Bell v. State, 881 N.E.2d 1080, 1087 (Ind. Ct. App. 2008) (reducing class A felony drug conviction to class B felony drug conviction because defendant established he was in drug free zone only at the request or suggestion of an agent of a law enforcement officer).

Because it is a "strict liability" enhancement, I believe that a defendant is entitled to prove at trial that he was lured into the drug free school zone by law enforcement or their agent/informant. In other words, so long as it is supported by the proof, a defendant should be entitled to raise the defense of luring when facing a charge under the Act. Additionally, because the hybrid offense/enhancement is required to be presented to the jury, I believe that a jury is entitled to a specific instruction, separate and apart from entrapment, regarding the defense of luring. See e.g., United States v. Cortes, 757 F.3d 850, 861 (9th Cir. 2014) (holding that drug types and quantities triggering higher statutory maximum sentences . . . are jury questions under Apprendi v. New Jersey . . . therefore [it] stands to reason that any defenses to those drug types and quantities must be submitted to the jury as well, when the proffered defense has the potential to change the statutory maximum or minimum sentences). I simply do not believe that the Tennessee legislature intended the scope of the Act to include drugs brought into the protected school zone by law enforcement's own design. This concept of luring, which commonly takes the form of an undercover sting operation, is inconsistent with the legislative intent of the Act and defeats the overall purpose of "creat[ing] a drug-free school zone to reduce the occurrence of illegal drug activity in and around school facilities in order to enhance the learning environment." Smith, 48 S.W.3d at 168.

Aside from the issues identified in the majority opinion, the problem in this case, as intimated by the trial court, is that the proof did not demonstrate that the Defendant was in fact lured to the gas station within the drug free zone. The informant testified that the Defendant selected the location. The Defendant testified that he told the informant that "[h]e had to run home and get [the mushrooms], and she said, 'That's fine.' And [the Defendant] also told her [he] had to get gas. And she says, 'Well, I'm up here at the BP[.]'" There was also testimony that the informant lived "point three miles" from the gas station. This proof neither raises the defense of luring nor supports an inference of the same. For these reasons, I reluctantly concur in results only.

_____
CAMILLE R. McMULLEN, JUDGE

-4-