# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 11, 2013

## STATE OF TENNESSEE v. MICHAEL GOODRUM

**Appeal from the Circuit Court for Maury County**
**No. 20549      Robert L. Jones, Judge**

___

**No. M2012-02066-CCA-R3-CD - Filed March 20, 2014**

___

A Maury County jury convicted the Defendant-Appellant, Michael Goodrum, of one count of possession of .5 grams or more of cocaine with the intent to sell within 1,000 feet of a park, a Class B felony, and one count of possession of .5 grams or more of cocaine with the intent to sell within 1,000 feet of a public school, a Class A felony. See T.C.A. §§ 39-17-417, -432 (2008). The trial court merged the two counts into one conviction and sentenced the Defendant as a Range I, standard offender to fifteen years in the Tennessee Department of Correction. On appeal, the Defendant argues that: (1) the evidence was insufficient to support his conviction; (2) the trial court improperly excused a prospective juror; (3) the trial court erred in submitting his case to the jury for deliberation; and (4) application of the Drug-Free School Zone Act violated his constitutional rights to due process and equal protection. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Robert C. Richardson, Jr. and Cynthia A. Cheatam, for the Defendant-Appellant, Michael Goodrum.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Mike Bottoms, District Attorney General; and Brent Cooper, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The case arises from the execution of a search warrant at a residence in Columbia, Tennessee where the Defendant-Appellant, Michael Goodrum,[1] was present. A Maury County Grand Jury indicted the Defendant for one count of possession of .5 grams or more of cocaine with the intent to sell within 1,000 feet of a park and one count of possession of .5 grams or more of cocaine with the intent to sell within 1,000 feet of a public school. The following proof was adduced at trial.

**Trial.** Officer Jason Dark testified that he has been employed with the Columbia Police Department for the past fourteen years, and specifically in the Narcotics and Vice Division for five years. On July 9, 2008, he was in charge of executing a search warrant at 504 East 9th Street, a residence in Columbia, Tennessee. Raven Fleming and Gary Fleming were named in the search warrant.[2] Officer Dark stated that he and his partner had previously used a confidential informant to conduct a controlled purchase of crack cocaine from this residence. He said the Defendant was not known to the police prior to the execution of the search warrant. After the search took place, the names Raven Fleming, Robert Fitzgerald, and Michael Goodrum were added to the search warrant as individuals to be charged. The search warrant was entered into evidence.

Officer Dark identified a layout of the residence that was prepared by the police after the search. The diagram depicted the living room as the first room upon entering the front door at 504 East 9th Street. On the diagram, Officer Dark drew a couch to the left of the front door. Directly in front of the door, Officer Dark saw a loveseat, which he also marked on the diagram. He marked the location of where the Defendant was secured, between the front door and the loveseat. There was a kitchen directly beyond the living room. The diagram was entered into evidence.

Officer Dark said that when he and his team arrived at the Flemings' residence to execute the search warrant, Trammell Jennings, a known drug dealer, was in the front yard. Jennings saw the police and fled from the scene on foot. Due to this compromise, five or six officers quickly entered the residence through the front door. Upon entry, the officers identified themselves as police and told everyone inside to get on the ground and show their

---

[1] The Defendant-Appellant is also referred to as "Michael Keith Goodrum" and "Michael K. Goodrum" elsewhere in the record. For purposes of this opinion, we use the name "Michael Goodrum" as reflected in the indictment.

[2] Though the record sometimes uses the surname "Flemming" to refer to the subjects of the search warrant, we use the spelling of the name as listed in the search warrant.

hands. Officers secured the scene and Sergeant Haywood advised the persons inside of their Miranda rights. When Officer Dark entered the residence, he saw the Defendant lying on the living room floor "just beyond the front door." He also saw Raven Fleming in the living room with the Defendant. Ms. Fleming was lying on the floor in front of the couch. A person named Gary Brown was in the area beyond Ms. Fleming and the Defendant. Robert Fitzgerald, a known drug dealer, was found in the kitchen.

Officer Dark testified that when he first saw the Defendant, Sergeant Haywood was securing him. Officer Dark was preparing the residence for a search when Sergeant Haywood called him over to the area of the Defendant. Officer Dark observed the Defendant on his side and a bag of crack cocaine underneath the chest area where he had been lying. Officer Dark said that Sergeant Haywood searched the Defendant and did not find a crack pipe or anything else for smoking crack cocaine. To Officer Dark's knowledge, the Defendant did not have anything on his person such as a weapon, scales, a cell phone, or substantial currency.

During the execution of the search, the police found a bag of marijuana behind the couch, Xanax pills in Ms. Fleming's bedroom closet, and ecstasy pills on the kitchen counter near where Mr. Fitzgerald was secured. The police also found a crack pipe on Mr. Brown's person, but no drugs. A total of $291 was seized from Ms. Fleming. According to Officer Dark, Ms. Fleming was subsequently charged with possession of marijuana and the Xanax pills; Mr. Fitzgerald was charged with possession of the ecstasy pills; Mr. Brown was charged with possession of the crack pipe; and the Defendant was charged in the case sub judice. Officer Dark testified that the bag found beneath the Defendant was secured as evidence and sent to the Tennessee Bureau of Investigation (TBI) Crime Laboratory for testing. He said the TBI analysis determined the substance to be crack cocaine in the amount of 1.7 grams.[3]

Officer Dark estimated that, throughout his career, he has arrested hundreds of crack cocaine users and close to one hundred people for selling crack cocaine. He typically did not find crack pipes on people arrested for selling crack cocaine. Of the individuals Officer Dark has arrested for using crack cocaine, nearly 100 percent of them had crack pipes. He said that in 2008, the street value of crack cocaine in Maury County was $20 for "crack rocks" at the user level. He was familiar with this figure through his experience as a narcotics investigator and through the use of informants for controlled purchases. Officer Dark said that $20 crack rocks usually weighed .1 grams. He stated that a high-end user might spend

---

[3] On the night of the search at 504 East 9th Street, Officer Dark weighed the plastic bag with the narcotics and found it to be 2.4 grams. He testified that the difference in weight was because the TBI weighs the substance without the bag.

$100 for a gram of crack cocaine, but "[o]nce you start getting above a gram, it's usually a dealer buying from a dealer." Of the hundreds of arrests he has made for crack cocaine use, he said that a user would typically be found with a $20 rock, but usually no more than two rocks. In his experience, users do not "save up" crack cocaine for future use. Officer Dark testified that he has viewed videotaped transactions where dealers have sold crack rocks from a larger bag of crack without the use of scales or additional bags and that generally, "it's a quick hand-to-hand transaction." He said that the 1.7 grams of crack cocaine secured from beneath the Defendant's chest would have been the equivalent of 17 crack rocks at a street value of $20 each.

In the course of his investigation, Officer Dark determined that 504 East 9th Street was located within a 1,000 feet radius of both Frierson-Johnson Park and College Hill School. After accessing a computer program used by the city of Columbia in its planning, Officer Dark found the distance between 504 East 9th Street and Frierson-Johnson Park to be 572 feet. He also determined the distance between the residence and College Hill School to be 872 feet.[4] He made his measurements from the front door of the residence to the edge of the property line of the park and the school. Officer Dark personally tested the accuracy of the computer program by using a counter wheel to measure two different points and found the physical and the computer-generated measurements to be exact. He also calibrated the counter wheel with a tape measure. In his fourteen years employed with the Columbia Police Department, Officer Dark testified that sixty-five to seventy percent of his time was spent covering the vicinity of 504 East 9th Street. He identified an aerial map of the area and marked the residence, Frierson-Johnson Park, and College Hill School.

Sergeant Jeremy Haywood of the Columbia Police Department testified that he was part of the entry team during the July 9, 2008 search at 504 East 9th Street. In the three years that he was in the Vice Unit, Sergeant Haywood estimated that he participated in fifty to one hundred searches. In this search, he was the third or fourth person to enter the front door. The first officers who entered identified themselves and told the occupants to "Get on the ground." Upon entry, Sergeant Haywood encountered the Defendant in the living room near the front door. The Defendant was in the process of getting to the floor as ordered. Sergeant Haywood also observed Ms. Fleming make her way from the couch to the floor. Until the scene was secured, Sergeant Haywood remained in the living room and monitored Ms. Fleming and the Defendant as they were lying face down on the floor with their hands at their sides.

---

[4] The record also includes an aerial map in which Officer Dark wrote the distance between the school and the residence, and between the park and the residence, to be 882 feet and 557 feet, respectively. He testified that these measurements were made from different points between these locations.

Sergeant Haywood subsequently searched the Defendant for weapons and handcuffed him. The Defendant did not have anything in his pockets. Immediately upon rolling the Defendant over on his side, Sergeant Haywood saw "[a] plastic bag with white rock type substance that appeared to be crack cocaine" underneath the Defendant's chest and stomach area. He then called for Officer Dark to come observe the substance. According to Sergeant Haywood,"[the Defendant] was adamant that it wasn't his drugs." He did not see any drugs in the Defendant's hands when he entered the residence. He also did not observe any objects being thrown in the Defendant's direction, either through the air or across the floor. Sergeant Haywood testified that he did not know how the drugs ended up on the floor. He said he would not have been able to observe the Defendant if he had dropped the drugs from his hand and laid on them.

Special Agent Laura Adams, a forensic scientist with the TBI Crime Lab, testified as an expert witness in the identification of controlled substances. In the instant case, Agent Adams analyzed a "rock-like substance" and determined that it contained cocaine and weighed 1.7 grams. She generated a one-page lab report, which was admitted into evidence.

Mary H. Carter testified that she has been employed with the Maury County school system as a supervisor of attendance and discipline for the past twenty-seven years. She stated that in July of 2008, Horace Porter School at College Hill was a public, alternative school in Maury County.

The Defendant chose not to testify and did not present any proof at trial. Based on the foregoing evidence, the jury convicted the Defendant as charged in the indictment. At a subsequent sentencing hearing, the trial court merged the two counts into one conviction for possession of .5 grams or more of cocaine with the intent to sell within 1,000 feet of a public school. The Defendant was sentenced as a Range I, standard offender to fifteen years' imprisonment, to be served at 100 percent. After the denial of his motion for new trial, this timely appeal followed.

**ANALYSIS**

**I. Sufficiency of the Evidence.** On appeal, the Defendant argues that the evidence presented at trial was insufficient to support his conviction. He asserts that his "mere presence" at 504 East 9th Street and his "mere association" with Raven Fleming are insufficient to support a finding that he constructively possessed the cocaine discovered in the residence. He maintains that there was no physical evidence linking him to the cocaine and no proof of an intent to resell the drugs. In response, the State contends that there was sufficient evidence for any rational trier of fact to find the Defendant guilty beyond a reasonable doubt. Upon review, we agree with the State.

We begin our analysis of this issue by recognizing well established law concerning an appellate court's review of the sufficiency of the evidence. The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)).

The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). This court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659. A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

"In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence." State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing Duchac v. State, 505 S.W.2d 237, 241 (Tenn. 1973); Marable v. State, 313 S.W.2d 451, 456-58 (Tenn. 1958)). However, "[t]he jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting Marable, 313 S.W.2d at 457). This court may not substitute its inferences for those drawn by the trier of fact in cases involving circumstantial evidence. State v. Sisk, 343 S.W.3d 60, 65 (Tenn. 2011) (citing State v. Lewter, 313 S.W.3d 745, 748 (Tenn. 2010)). We note that the standard of review "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Hanson, 279 S.W.3d 265, 275 (quoting State v. Sutton, 166 S.W.3d 686,

689 (Tenn. 2005)); State v. Carruthers, 35 S.W.3d 516, 557 (Tenn. 2000). The court in Dorantes specifically adopted the standard for circumstantial evidence established by the United States Supreme Court in Holland:

> "Circumstantial evidence . . . is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more."

Dorantes, 331 S.W.3d at 380 (quoting Holland v. United States, 348 U.S. 121, 140 (1954)).

The Defendant was convicted of possession of .5 grams or more of cocaine with the intent to sell within 1,000 feet of a public school. To sustain a conviction for this offense, the State was required to prove beyond a reasonable doubt that the Defendant knowingly "possess[ed] [cocaine] with intent to manufacture, deliver or sell [cocaine]." T.C.A. § 39-17-417(a)(4) (2008). A violation of subsection (a) with respect to .5 grams or more of cocaine is a Class B felony. Id. § 39-17-417(c)(1). In addition, the Drug-Free School Zone Act states that a violation of Tennessee Code Annotated section 39-17-417 "that occurs on the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or private elementary school, middle school, secondary school, preschool, child care agency, or public library, recreational center or park shall be punished one (1) classification higher than is provided in § 39-17-417(b)-(i) for such violation." Id. § 39-17-432(b)(1) (2008). In other words, a defendant convicted of possession of .5 grams or more of cocaine with the intent to sell, ordinarily a Class B felony, would be punished for a Class A felony if the defendant possessed the drug within 1,000 feet of a public or private elementary, middle, or high school. Subsection (b)(3) specifically exempts parks from incarceration at the higher classification in subsection (b)(1). Because the Defendant was a Range I, standard offender, and because his offense occurred within 1,000 feet of a public school, he was sentenced for a Class A felony and was subject to a sentence range of fifteen to twenty-five years. Id. § 40-35-112(b)(2) (2008). In addition, he was required to serve "at least the minimum sentence for [his] appropriate range" at 100 percent. Id. § 39-17-432(c), (d), (e). Here, the trial court ordered the Defendant to serve the minimum fifteen-year sentence at 100 percent and noted on the judgment sheet that the sentence was subject to the Drug Free Zone Act.

"Possession [of drugs] may be actual or constructive." State v. Robinson, 400 S.W.3d 529, 534 (Tenn. 2013) (citing State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001)). Constructive possession depends on the totality of the circumstances in each case and may be based on circumstantial evidence. Id. at 534. Constructive possession is established when a person knowingly has "'the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.'" State v. Williams, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981) (quoting United States v. Craig, 522 F.2d 29, 32 (6th Cir. 1975)). It has also been defined as "the ability to reduce an object to actual possession.'" Id. at 125 (quoting United States v. Martinez, 588 F.2d 495, 498 (5th Cir. 1979)). "The mere presence of a person in an area where drugs are discovered is not, alone, sufficient to support a finding that the person possessed the drugs." State v. Bigsby, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000) (citing State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987)). In addition, mere association with a person in control of the drugs or the property where the drugs are found is not enough to support a finding of knowing possession. Cooper, 736 S.W.2d at 129.

In challenging the sufficiency of the evidence, the Defendant contends that the State failed to establish the elements of constructive possession and intent to sell the cocaine. He essentially argues that he was merely present at the residence where the drugs were found and that other known drug dealers were also in the area.

We conclude that there was sufficient evidence to support the Defendant's conviction. The proof established that, at the time the police entered the living room at 504 East 9th Street, Raven Fleming was on the couch to the left of the front door and the Defendant was between the loveseat and the front door. Because of the rapid entry of the police, Ms. Fleming reacted by hiding the contraband marijuana in her possession behind the couch and the Defendant attempted to cover a bag of crack cocaine by lying on top of it. Sergeant Haywood testified that, upon his entry into the residence, he did not see any objects thrown in the Defendant's direction. He said he would not have been able to see if the Defendant had dropped an object from his hand to the floor in the process of lying on the ground. Law enforcement seized a total of $291 from Ms. Fleming at the time of her arrest. Officer Dark testified that 1.7 grams of crack cocaine could be individually sold as seventeen "crack rocks" at a total value of $340. Based on his experience, a user would not "save up" crack cocaine and transactions of more than a gram of cocaine usually occur between dealers. The proof also showed that 504 East 9th Street was located within 1,000 feet of a school and a park. Viewed in the light most favorable to the State, the evidence reflects that the Defendant and Ms. Fleming were involved in a drug transaction shortly before the police arrived to execute the search warrant. At minimum, the Defendant had knowledge that he was lying on contraband narcotics, as evidenced by his adamant denial that the drugs belonged to him. Due to his proximity to the crack cocaine, the Defendant had the ability to

reduce the drugs to his actual possession. Contrary to the Defendant's assertion, the proof established more than mere association or mere presence. Here, the jury considered, and rejected, the Defendant's "wrong place, wrong time" argument in favor of the prosecution's theory, as was its prerogative.

Furthermore, the evidence was sufficient for a reasonable juror to find the Defendant guilty of possession with intent to sell. The proof regarding intent in this case, as in most cases, was largely circumstantial. However, in light of Officer Dark's testimony and the amount of cocaine that was found, the jury could reasonably infer that the drugs were for resale. See T.C.A. § 39-17-419 (2008) ("It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing."). Such "other relevant facts" that can give rise to an inference of intent to sell or deliver include the absence of drug paraphernalia, the presence of a large amount of cash, the packaging of the drugs, and the street value of the drugs. See State v. Belew, 348 S.W.3d 186, 191-92 (Tenn. Crim. App. 2005) (citing State v. Chearis, 995 S.W.2d 641, 645 (Tenn. Crim. App. 1999) (finding sufficient evidence to support the jury's finding of intent to deliver when the defendant possessed 1.7 grams of crack cocaine, no drug paraphernalia, and 5.1 grams of baking soda); State v. Logan, 973 S.W.2d 279, 281 (Tenn. Crim. App. 1998) (finding sufficient evidence of intent to sell to support conviction when the defendant possessed a large amount of cash and several small bags of cocaine); State v. Brown, 915 S.W.2d 3, 8 (Tenn. Crim. App. 1995) (finding that the absence of drug paraphernalia and the manner of packaging of drugs supported an inference of intent to sell); State v. Matthews, 805 S.W.2d 776, 782 (Tenn. Crim. App. 1990) (finding that testimony concerning amount and street value of drugs was admissible to prove the defendant's intent); State v. Charles Benson, No. M2003-02127-CCA-R3-CD, 2004 WL 2266801, at *8 (Tenn. Crim. App. Oct. 8, 2004) (finding that the absence of drug paraphernalia and testimony of value and amount of 3.3 grams of cocaine sufficient for the jury to infer the defendant's intent to sell and deliver it), perm. to appeal denied (Tenn. May 23, 2005); State v. William Martin Frey, No. M2003-01996-CCA-R3-CD, 2004 WL 2266799, at *8 (Tenn. Crim. App. Oct. 6, 2004) (finding that testimony of 1.8 grams of cocaine, a "stack" of cash, and absence of drug paraphernalia constituted sufficient evidence to support the jury's inference of intent to sell), perm. to appeal denied (Tenn. Feb. 28, 2005)). Here, the Defendant was found lying on top of 1.7 grams of crack cocaine which had a total street value of $340. He did not have any drug paraphernalia to support a finding of personal use. The evidence was sufficient to establish possession with the intent to sell.

Based on the evidence presented at trial, a rational trier of fact could find the Defendant guilty beyond a reasonable doubt of possession of .5 grams or more of cocaine

with the intent to sell within 1,000 feet of a drug-free zone. Accordingly, he is not entitled to relief.

**II. Batson Challenge.** The Defendant contends that the State "unfairly sought to strike" an African-American female Prospective Juror, and that the trial court erred in excusing her. The State responds that the trial court properly overruled the Defendant's Batson challenge because the record does not support a finding of purposeful discrimination. We agree with the State.

It is well established that a State's use of peremptory challenges to intentionally exclude jurors based on race violates the defendant's right to equal protection. Batson v. Kentucky, 476 U.S. 79 (1986). In order to establish such a violation, a defendant must first make a prima facie showing of purposeful discrimination against a prospective juror. Batson, 476 U.S. at 93-94. In doing so, the defendant must establish "that a consideration of all the relevant circumstances raises an inference of purposeful discrimination." Woodson v. Porter Brown Limestone Co., 916 S.W.2d 896, 903 (Tenn. 1996). If a prima facie showing of purposeful discrimination is established, the burden then shifts to the State to establish a neutral basis for the challenge. Batson, 476 U.S. at 97.

The State's neutral explanation should be reasonably specific and clear, id. at 98, though it "need not be persuasive, or even plausible." State v. Hugueley, 185 S.W.3d 356, 368 (Tenn. 2006) (citing Purkett v. Elem, 514 U.S. 765, 767-68 (1995)). "'Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'" Purkett, 514 U.S. at 768 (quoting Hernandez v. New York, 500 U.S. 352, 360 (1991) (plurality opinion)).

If the State provides a race-neutral explanation, the trial court "'must carefully articulate specific reasons for each finding on the record, i.e., whether a prima facie case has been established; whether a neutral explanation has been given; and whether the totality of the circumstances support a finding of purposeful discrimination.'" Hugueley, 185 S.W.3d at 369 (quoting Woodson, 916 S.W.2d at 906); see also Batson, 476 U.S. at 97. The findings of the trial court are to be accorded great weight and will not be set aside unless they are clearly erroneous. Woodson, 916 S.W.2d at 906; see also Miller-El v. Cockrell, 537 U.S. 322, 339-40 (2003) (noting that deference should be given to the trial court's ruling since the trial court is in the best position to make credibility determinations regarding a prosecutor's race-neutral explanation).

Here, the State questioned the jury panel about whether anyone had "strong negative feelings toward law enforcement[.]" The Prospective Juror in question responded affirmatively. The following exchange then occurred:

| | |
|---|---|
| [STATE]: | And would you have problems if all the proof in this case is going to come through law enforcement officers, are you going to start off leaning one way or [the] other? |
| [JUROR]: | Yes. |
| [STATE]: | Would it be fair to say you have at least a certain level of distrust for law enforcement? And if that's not a fair statement, tell me that too. I'm just guessing. |
| THE COURT: | You can pick your own words. You don't have to use [the State's]. |
| [STATE]: | Right, you don't have to use my words. |
| [JUROR]: | I mean, you've got a lot of crooked cops out here, so . . . |
| [STATE]: | And is that based on something you personally experienced? |
| [JUROR]: | Uh-huh. |

When asked whether she could be impartial in considering the testimony of a police officer, the Prospective Juror responded, "It really depends. It's kind of hard to say. It just depends."

Subsequently, during an in-chambers conference, the State exercised a peremptory challenge to strike the Prospective Juror, noting that she "[d]istrusts law enforcement." The State also believed that she was related to a convicted drug dealer with whom the prosecution was personally familiar.[5] The trial court noted that the Prospective Juror "was more animated than the other jurors" in response to the question about law enforcement. Prior to any objection from the defense, the trial court stated, "I'm satisfied from the face of it that [the] State has given a neutral reason for excusing [the Prospective Juror], but she is African American for the record." Although defense counsel argued that the Prospective Juror was properly rehabilitated, the trial court stated:

---

[5] The prosecutor stated during the in-chambers conference, "And I've [sent the convicted drug dealer] to prison myself." The State also explained that the Prospective Juror and the convicted drug dealer had previously been together in the District Attorney's Office as a couple.

All right. Now if this was a challenge for cause, we could consider that you have rehabilitated her; and the burden might pass back to the State to try to show some bias or prejudice that would justify the Court excusing her for cause. But I think under "Batson," the only test here [is] whether or not the State has expressed a race neutral reason for excusing her from the jury in this case. And if [the State] thinks . . . through the investigator for the office that's present in here with us now, that she is or has been in a relationship with someone convicted of a drug offense in Maury County; and she's expressed in a more animated way than most other jurors a realization that some policeman may not be believable, or may not be worthy of trust. Then that is a race neutral reason, I'm inclined to believe.

Based on the record, we conclude that the Defendant has failed to establish purposeful discrimination or inherent discriminatory intent in the State's exercise of a peremptory challenge to excuse the Prospective Juror. As an initial matter, the Defendant did not establish a prima facie showing of racial discrimination. Nevertheless, the trial court found that the State had a race-neutral reason and necessarily accredited the prosecution's explanation for striking the Prospective Juror in question. The record reflects that the Prospective Juror was particularly "animated" and vocal in expressing her distrust of law enforcement. The State also explained that it was previously familiar with the Prospective Juror in relation to a known drug dealer. The trial court did not err in permitting the State to exercise its peremptory challenge. The Defendant is not entitled to relief on this issue.

**III. Alleged Trial Court Error in Presenting the Case to the Jury.** The Defendant argues on appeal that the trial court erred in presenting the instant case to the jury. He contends that the State did not put forth any proof of wrongdoing "other than he was found at a location where drugs were present." The State responds that the Defendant has waived this issue for failure to cite to the record or to provide authority in favor of this argument. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."). To the extent that the Defendant is arguing that the trial court erred in denying his motion for judgment of acquittal, the State asserts that the evidence was sufficient to sustain the convictions. We agree that the issue is waived.

The Defendant makes little to no further argument in support of this issue and fails to cite any authority or reference the record to aid our review. Regardless of the Defendant's scant argument or citation in support of this issue, we have reviewed the record and conclude that the evidence sufficiently supports his conviction for possession of .5 or more grams of cocaine with the intent to sell within 1,000 feet of a drug-free zone. The trial court did not

-12-

err in viewing the evidence in the light most favorable to the State and in denying the Defendant's motion for judgment of acquittal. This issue is without merit.

**IV. Constitutionality of the Drug-Free School Zone Act.** The Defendant contends that the application of the Drug-Free School Zone Act violated his constitutional rights to due process and equal protection. He asserts that the enhancement of his sentence is "constitutionally unfair" because he is "treated differently from another person charged with possessing drugs at a fraction of an inch beyond 1000 feet of a school or other prohibited location and causes a distinct difference in his liberty by eliminating the mandatory time to serve." He also challenges the efficacy and reasoning behind the Act, arguing that most offenses in Maury County occur after school is over and where children are not present. In response, the State argues that this court has previously upheld the constitutionality of the Drug-Free School Zone Act. We agree that the Defendant is not entitled to relief.

We begin our analysis by noting that "[t]he courts are charged with upholding the constitutionality of statutes where possible." State v. Joyner, 759 S.W.2d 422 (Tenn. Crim. App. 1987) (citing Dykes v. Hamilton County, 191 S.W.2d 155, 159 (1945)). As previously mentioned, the Defendant's conviction for possession of .5 grams or more of cocaine, usually a Class B felony, is enhanced to a Class A felony when the offense occurs within 1,000 feet of a school. See T.C.A. §§ 39-17-417(c)(1), -432(b)(1). The Defendant was also required to serve a mandatory minimum sentence at 100 percent. See id. § 39-17-432(c), (d), (e). In enhancing the punishment for drug offenses occurring within a school zone, the legislature expressly stated:

> It is the intent of this section to create drug-free zones for the purpose of providing vulnerable persons in this state an environment in which they can learn, play and enjoy themselves without the distractions and dangers that are incident to the occurrence of illegal drug activities. The enhanced and mandatory minimum sentences required by this section for drug offenses occurring in a drug-free zone are necessary to serve as a deterrent to such unacceptable conduct.

T.C.A. § 39-17-432(a). This court has previously addressed constitutional challenges to the Drug-Free School Zone Act and concluded that the Act does not violate constitutional protections of due process, equal protection, and prohibitions against cruel and unusual punishment. See State v. Jenkins, 15 S.W.3d 914 (Tenn. Crim. App. 1999); State v. Smith, 48 S.W.3d 159 (Tenn. Crim. App. 2000). This court has also upheld the 2005 amendment to the Act as constitutional. See State v. Devon Wiggins, No. W2007–01734–CCA–R3–CD, 2009 WL 1362323 (Tenn. Crim. App. May 15, 2009), perm. app. denied (Tenn. Dec. 21, 2009). To the extent that the Defendant argues that most violations of the Act occur after

school or where children are not present, we held in State v. Smith, 48 S.W.3d 159 (Tenn. Crim. App. 2000), that "[t]he language of the Act unambiguously imposes enhanced criminal penalties for drug offenses occurring inside the school zone regardless of the timing of the drug offense." Id. at 169; see also Jenkins, 15 S.W.3d at 918 ("[W]e disagree with the defendant's suggestion that the statute should be, as a constitutional matter, enforced only when children are actually attending school during the regular school year."). After reviewing the record, we see no reason to depart from our prior holding that the scope of the Act is rationally related to the State's legitimate interest in protecting vulnerable persons from the dangers incident to illegal drug activity. See Smith, 48 S.W.3d at 169-70. The Defendant is not entitled to relief.

## CONCLUSION

Discerning no error, we affirm the judgment of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE