IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs August 7, 2018

**STATE OF TENNESSEE v. RAYMOND B. THOMAS**

**Appeal from the Circuit Court for Dyer County**
**No. 13-CR-423, 13-CR-424      R. Lee Moore, Jr., Judge**

_____

**No. W2017-02032-CCA-R3-CD**

_____

A Dyer County jury convicted the Defendant, Raymond B. Thomas, of two counts of sale of dihydrocodeinone, a Schedule III controlled substance commonly referred to as Hydrocodone, within 1,000 feet of a school zone and sale of a controlled substance obtained through TennCare. The trial court sentenced the Defendant to concurrent terms of six years for each of his sale of dihydrocodeinone convictions and two years for the sale of a controlled substance obtained through TennCare conviction. On appeal, the Defendant asserts that the evidence is insufficient to support his convictions for sale of dihydrocodeinone within 1,000 feet of a public elementary school. After review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROBERT L. HOLLOWAY, JR., JJ., joined.

Noel H. Riley, II, Dyersburg, Tennessee, for the appellant, Raymond B. Thomas.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Laurel E. Webb, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

A Dyer County grand jury indicted the Defendant for two counts of sale of dihydrocodeinone within 1,000 feet of a public elementary school and one count of sale of a controlled substance obtained through TennCare. At trial, the parties presented the following evidence: Mike Leggett, a Dyersburg Police Department detective, testified

about a March 27, 2013 controlled buy involving the Defendant. The controlled buy took place on Ayers Street, in a residential area of Dyersburg, Tennessee, located behind Dyersburg Primary School.

The confidential informant ("CI") used in the March 27 controlled buy told officers that she could arrange a purchase for Hydrocodone. She made the arrangements and then Detective Leggett met with her in advance to search her and her vehicle for narcotics and money. He then gave her "recorded" money for payment during the transaction. The CI was also fitted with audio and video recording equipment to allow the officers to monitor the controlled buy. The CI then proceeded to the Defendant's residence on Ayers Street.

The State played the audio and video recording of the controlled buy for the jury. The audio recording contains the CI's telephone call to the Defendant telling him that she is on the way to his residence. The video recording depicts the CI driving to the Defendant's residence while stating aloud the route taken to the residence. When the CI arrived, the CI entered the residence where the Defendant was seated on a couch. The Defendant and CI talk, some of which was indiscernible. The CI asked the Defendant why he was called "Frog," and the Defendant replied that his "real name" is Raymond. After a few minutes, the Defendant confirmed that the CI had his "number," and the CI left.

Detective Leggett testified that, after leaving the Defendant's residence, the CI met with officers. The CI gave the officers the four pills that she bought from the Defendant, and then the officers searched the CI and her vehicle. The pills were sealed and sent to the Tennessee Bureau of Investigation ("TBI") for analysis.

On July 11, 2013, following the same procedure used in the previous controlled buy, the CI returned to the Defendant's residence to buy "Hydrocodone." After going to the Defendant's residence, the CI met with the officers and gave them five "Hydrocodone" pills. On cross-examination, Detective Leggett confirmed that the police department paid the CI $100 after each of the controlled buys.

Chris Clements, a Dyersburg Police Department Sergeant, testified consistently with Detective Leggett's account of the controlled buys. In addition, Sergeant Clements recalled that he and Detective Leggett were located about a block from the Defendant's residence during the controlled buys and listened to both transactions through the audio equipment. Sergeant Clements confirmed that the Defendant lived in a housing development located behind the elementary school.

The CI testified that she met the Defendant through a mutual friend. She said she knew the Defendant by his nickname, "Frog." The CI denied having ever used drugs but admitted she had sold drugs before. She said that her involvement as a confidential informant began due to pending criminal charges. The CI recalled that she contacted the Defendant on March 27, 2013, about buying "some Hydros." The Defendant told the CI that "he knew somewhere he could get them from." The CI arranged to meet with the Defendant at his house on Ayers Street. Before going to the Defendant's residence, she met with Detective Leggett and Sergeant Clements who prepared her for the controlled buy.

The State played the March 27 video recording again, and the CI confirmed the accuracy of the video recording. She explained that, when she entered the residence, the pills were lying on a table in front of the couch. She said that she took the pills and gave the Defendant the "recorded" money that the officers had given her. The CI said that she asked the Defendant during their interaction why he was called "Frog" in order to elicit his real name for identification purposes. The CI identified the video recording from July 11, 2013, and confirmed that it also accurately conveyed what occurred during her transaction with the Defendant.

The CI testified that officers searched her before and after both controlled buys and found nothing on her. She denied that she hid or concealed money or pills during either of the controlled buys.

Brock Sain, a TBI Special Agent Forensic Scientist, testified as an expert witness as to drug identification. Special Agent Sain analyzed the pills recovered on March 27, 2013, and determined the four pills were dihydrocodeinone, a Schedule III controlled substance. The five pills recovered on July 11, 2013, were also determined to be dihydrocodeinone. Special Agent Sain testified that Hydrocodone and dihydrocodeinone were "different word[s] for the same chemical substance" and that Lortab was a brand name for dihydrocodeinone. On cross-examination, Special Agent Sain confirmed that the pills were "standard milligram tablet[s] for pain." He stated that these types of pills generally come in weights of five or ten milligrams each.

Lori Jenkins, a family nurse practitioner, testified that while working at Rural Health Clinic of West Tennessee she wrote the Defendant a prescription for a thirty-day supply of Lortab to treat back pain. The prescription was for thirty tablets composed of 5 milligrams of Hydrocodone and 500 milligrams of acetaminophen. She identified the prescription dated July 2, 2013.

Carmen Cupples, a City of Dyersburg IT Manager, created a map showing the distance in feet between the Defendant's residence and Dyersburg Primary School, a

public elementary school. The distance between the school and the Defendant's house was 800 feet. Ms. Cupples confirmed that the distance was approximately three football fields and that there was a large wooded area between the Defendant's residence and the school.

Tony Ahne, an Office of Inspector General special agent, investigated the case of TennCare fraud related to the Defendant. Detective Leggett referred the case to him based upon information the detective learned during the controlled buys. The Defendant used his TennCare benefits to obtain the July 2, 2013 prescription for Hydrocodone from Ms. Anthony that he filled at Walgreens Pharmacy.

After hearing the evidence, the jury convicted the Defendant of two counts of sale of dihydrocodeinone within 1,000 feet of a public elementary school and one count of sale of a controlled substance obtained through TennCare. At a subsequent sentencing hearing, the trial court sentenced the Defendant to concurrent six year sentences for each of his sale of dihydrocodeinone convictions and a two year concurrent sentence for the sale of a controlled substance obtained through TennCare. It is from these judgments that the Defendant appeals.

## II. Analysis

The Defendant asserts that the evidence is insufficient to support his convictions for sale of dihydrocodeinone within 1,000 feet of a public elementary school. Specifically, he attacks the CI's credibility, and contends that the State failed to establish the Defendant's identity. He also asserts that the State failed to establish that the Defendant "knowingly" sold drugs in a Drug-Free School Zone. The State responds that the evidence presented supports the jury's verdict. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with

guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

It is unlawful to sell a controlled substance. T.C.A. § 39-17-417(a)(3). At the time of the Defendant's drug sales in 2013, dihydrocodeinone was listed as a Schedule II controlled substance; however, if the amount was less "than three hundred (300) milligrams . . . per one hundred (100) milliliters or not more than fifteen (15) milligrams

per dosage unit," the statute categorizes it as a Schedule III controlled substance. T.C.A. § 39-17-408(b); T.C.A. § 39-17-410(e) (2006). Additionally, selling dihydrocodeinone within 1,000 feet of an elementary school increases the punishment by one classification and subjects the offender to a fine. T.C.A. § 39-17-432(b)(1)(2).

The evidence, considered in the light most favorable to the State, shows that the Defendant obtained, on at least one occasion, dihydrocodeinone through his TennCare benefits. On two separate occasions, the Defendant arranged for the CI to come to his residence, a home located 800 feet from a public elementary school, to sell her dihydrocodeinone. The State presented video footage and still images from the footage of the Defendant during both controlled buys. The March 27 recording of the controlled buy shows the Defendant on the screen identifying himself as "Raymond." As to the Defendant's assertion that the State failed to prove his identity and his attack on the CI's credibility, we note that issues of identity and credibility are classic jury questions. *State v. Gregory Mullins*, No. E2004-02314-CCA-R3-CD, 2005 WL 2045151, at \*5 (Tenn. Crim. App., at Knoxville, Aug. 25, 2005), *no perm. app. filed*. And, as stated above, questions concerning the credibility of the witnesses are resolved by the trier of fact. *Evans*, 108 S.W.3d at 236. This court does not second-guess the weight, value, or credibility afforded to the evidence by the jury. Therefore, we conclude that the State presented sufficient evidence of identity to support the Defendant's convictions.

The Defendant also asserts that the State failed to prove that he "knowingly" sold the drugs within one thousand feet of a public elementary school. This court in *State v. Smith*, 48 S.W.3d 159 (Tenn. Crim. App. 2000), concluded that the legislature's intent to enact an "enhancement statute" was unmistakable both from the plain language of the Act and from the Act's legislative history. Because the act is an enhancement statute and not a separate offense, a *mens rea* is not required. *See State v. Jenkins*, 15 S.W.3d 914, 918 (Tenn. Crim. App. 1999). Therefore, the State was not required to prove *mens rea* for the enhancement penalties to apply. The facts supporting a Drug-Free School Zone enhancement factor were presented to the jury and determined beyond a reasonable doubt.

Accordingly, we conclude that the evidence is sufficient to support the Defendant's convictions for sale of dihydrocodeinone within 1,000 feet of a public elementary school. The Defendant is not entitled to relief.

### III. Conclusion

For the foregoing reasons, we affirm the trial court's judgments.

_____

ROBERT W. WEDEMEYER, JUDGE